binocular valued population with spawned nicole nicole michael michael mike counsel are you prepared for the telephone argument in usv morgan this is judge klinefeld yes judge i am thank you and do we have counsel for both sides on their thanks okay we'll hear from a felon judge i'm having is the other council on the phone council for the government is present in the courtroom you wouldn't have heard because he wasn't at the podium but okay thank you very much but he's present and all three judges are on the bench understood and thank you good morning my name is nancy henchcliffe and i'm the attorney for appellant lani morgan i'm an attorney in phoenix arizona and i just want to say i appreciate the opportunity to argue telephonically as the court is aware mr morgan was convicted of an assault with a deadly weapon a bat his conviction was affirmed on appeal and he filed a twenty two fifty five petition which was similar summarily denied the issue that has been certified as whether morgan was denied his right to effective assistance of counsel due to trial counsel's failure to present exculpatory evidence now this council let me let me tell you what was on my mind when i studied the this case great it looked this is judge klinefeld it looked to me as though the prosecution put on a really really weak case they didn't put on the victim they put on the little girl who basically said that the defendant didn't do it and with that week of prosecution case a lot of good defense lawyers would have just rested and decided to take their chances on on on the old brd as we used to call it in defense work and in addition as for putting on the wife's testimony that the defendant did did not hit her the judge said if you do i'm going to let the frightening dr ferraro testify and you know we see the same experts in case after case certainly and i'm thinking boy that'd sure scare me out of it and so because ferraro always testifies that the man is guilty yes and the judge so between the case being so weak I can't see why it's ineffective assistance of counsel just let a lot of things go and take take his chances can I address that please do all right I want to pick up on something that you just said to me because it's very true as defense counsel many times we are faced with a case where we really have no witnesses we have really nothing substantive to present our case is basically based upon cross-examination to poke holes in the state's case and rely upon some good argument and that's what we rely upon in in a case to show that in fact there's reasonable doubt your honor this really isn't that case not at all now I have filed a very lengthy brief here I hope it's not one that was filed ad nauseum it was filed to show you that to try to help the court and assist the court to show you why it is there's ineffective assistance here and let me be specific I'm not going to go through all the details of all the witnesses because that's been set forth and I know the courts read and aware of all of it there's one issue if nothing else this morning that I would like to stress it's an it's importance because I think that counsel failed to present this and it segues into the importance of Smith's testimony and Washington's testimony and that's timing timing was an extremely important in this case and here's why there is no doubt in this case that there were two 9-1-1 calls made from Oboe's residents the first one was made undisputed about 430 in the morning the second one was made at 755 in the morning the dispatchers testified as to this and when it comes to deputy Kennedy and deputy Kennedy was the first was the about 446 in the morning there's no doubt that the person who was on the line talking to the dispatcher was Lonnie Lonnie Morgan there is no doubt that Lonnie Morgan was at this lady's residence when when the 9-1-1 call was made now this is significance in term in terms of helping us to decide when this assault if it happened occurred and that's why it's important since we know that he was there at that time in the morning that we we understand the significance of the testimony of Smith and Washington because we know when deputy Kennedy got there and we know she says she got there at 446 in the morning so 15 minutes after Lonnie's on the phone at that from that resident talking to the dispatcher we know he's not there anymore he has left when talks to this woman and she's not injured she's not complaining about any threats nothing has happened well what does that mean why is that important that's important in terms of the timing of these events for these reasons we know from Smith testimony that he says he took Lonnie Morgan over there at about 415 430 in the morning we know from the sister Washington that she says Lonnie arrived at her place at about 450 450 a.m. in the morning so what you may say to me well I would direct your attention to an excerpt of record it's at 212 it's a little bit faint on the number but I believe it's 212 and in what this is is this is the police report of deputy Acton deputy Acton is the police officer who talked to this woman and and spoke to her later on in the morning at about after the 755 a.m. phone call is made and there's the complaint and and she arrives deputy Acton arrives and she's talking to Ogo and Ogo says I've been injured and she has been injured she's got injuries the significance of the report is found when it says and this is about the second paragraph says at four o'clock hours you know this is this is an interview of Ogo and she's talking on the day this happened right after the 9-1-1 call at 755 she's telling deputy Acton at four eight four o'clock hours a friend dropped Morgan off at the residence she then says I was assaulted and she goes in the details of what happened so she in essence is telling deputy Acton shortly after this friend drops this person off this assault takes place now remember you have deputy Kennedy there at 746 my client is gone according to what Smith has to say and what Washington has to say Smith says I dropped him off there at 415 perhaps 430 but you know what dr. Ferraro is going to testify she's going to testify that wherever the woman says anything exonerating about the man the woman is covering up for him and wherever she says anything that implicates the man in a crime that's the truth and even if she doesn't the man is guilty judge I failed in my mission because I haven't been clear and I apologize to the court this is long before she would have had an opportunity to defabricate at the point when she is doing this it's not just fabrication dr. Ferraro will say as those experts generally do that people recast these things in their own mind and and feel the need to put to blame themselves and excuse others judge I hear what you're saying and I must say I've never had benefit of listening to this lady's testimony but I understand I understand the gist of what you're saying I've read transcripts right I understand the court's point but I don't think it makes sense and what I'm trying to tell you because one problem Ogo testified that the first call her husband came over at 2 a.m. and that's when Kennedy was there so she did she's certainly got her times mixed up because the time of the call to the dispatcher wasn't until 430 judge you're absolutely right I'm you're right she did say she has these two calls at about 2 she's got 2 a.m. and 4 a.m. in her mind when she has indicated that these two phone calls were at 2 and 4 we know that's wrong we don't depend upon her word for that we don't have to depend upon my clients word for that we know that those calls in fact were made when I said earlier approximately 432 430 in the morning and 755 but I want to get back to the first judge's comments to me because I I think it's key to this case it I'm hearing some bleed over on the line but in any event what this is my point this is on this is on the date of 1027 96 when she's mad at this client and she's reporting to the police that she that she's just been horribly assaulted by him she's angry at him she's mad at him she wants him prosecuted she wasn't trying to recant and protect him at that point this is it this is at 7 in the morning on the day this happened this is before she's decided to recant much later at the detention hearing when for the reasons that Ferraro would state all these psychological factors kick in and she's decided now that she wants to protect him so when you say to me that you know this is insignificant I say to you your honor that that's not true in this particular situation this is a police report again it's 212 this is her report to the police that morning before she's had any thoughts of recanting that's my point report all be true except for the times are you asking me if it's all true in terms of thing is it logical that it could all be true except that the woman is mixed up on times well she's mixed up on times and I think that's really irrelevant I think I think let's face it none of us watch look at you know if you're in a situation like this you may not be looking at the clock I'm not holding it against the lady you're saying she's a liar because she says two and four she's made a mistake on the time instead of pinning it to two and four we know the exact times we know there's two instances so it's it's at 430 and it's at 755 but everybody else in this case the deputies Smith Washington are talking about it in terms of the first phone call and the second phone call and so that's my point what's happened at 430 though that was a the second visit as far as her recollection is concerned because you said the first visit was a two didn't see so I'm not okay and and I you know again I failed in my mission because I understand the court's position and let me tell you why perhaps more than focusing on the exact time the sequence because she's saying the assault occurred right after the a friend dropped the friend dropped him off and what I'm saying to you is that Smith says he dropped him off at 430 and she also told at a later time she told Williams now this is later in time but she mentioned to Williams who was an investigator I think for the defense I'm not sure of that but tells that a friend in fact this friend was in fact Smith and it immediately after Smith drops Lonnie off is when this confrontation or assault if we will takes place so regardless of whether we pin it down at two or four this is a situation where the significance is the timing of it in terms of the assault is occurring soon after the friend dropped this person off and we know that Smith says that he dropped this person that he dropped my client off at approximately four o'clock or excuse me 415 430 in the morning we know a 911 call comes in at that time we know that for sure we also know for sure that Lonnie is on the line we also know for sure that he's gone by the time the officer gets there. Thank you counsel. Okay thank you. Michael Morrissey for the government let me attempt to take Dr. Ferraro out of this case right away because I think that there were very good tactical reasons why Amy Ogo the victim was not going to be called by the defense. Judge Broomfield made a finding he said at page 100 of the transcript on April 9th 1997 referring to the mother's interference with Nicole the daughter's testimony that in his 26 years on the bench he had never before seen direct evidence of subordination of thrust of the victim's testimony was going to be my bad I was on alcohol I was on cocaine that was going to be nearly a ridiculous comment to put forth in light of the fact that Deputy Sheriff Kennedy at 430 said she showed no signs of alcohol and no signs of cocaine. Later at 750 firefighter Essex who had his testimony she was not under influence of stimulants and she was not under the influence of alcohol. Further so all and Deputy Sheriff Acton said the same thing so every objective witness who saw this victim said no she was not under the test under the influence of alcohol or cocaine. For the mother victim to then get on the stand and say yes I was in light of her recantation testimony was going to be a time bomb of a problem for the defense and clearly justified tactically the decision not to put her on. Oh so you're saying independently of the risk in that this case could go sour the defendant would have been exposing himself to another felony case. I don't think I'm saying that but maybe I am I don't understand the thrust of perjury. Not the defendant the mother who didn't testify because the defendant had his own issues he had his trial but the mother who recanted at the detention hearing then got a lawyer appointed because it was found by the magistrate judge to be clear problems with perjury. At trial the district court upon inquiry because Nicole the daughter had to testify twice because the first time she had problems upon inquiry why did she have problems because I talked to my mom and that's when judge Broomfield said he'd never before seen direct evidence of subordination of perjury. Well supposedly the issue is whether they're going to get in her testimony at the detention hearing wasn't it? I don't know on what basis they would have done that but that seemed to be suggested here that she was unavailable or something. She was unavailable because the lawyer appointed for her made the representation that she would assert her fifth amendment rights and therefore she was unavailable because she was in a trap. If she testified and said that I lied at the detention hearing then she was exposing herself to liability. If she testified that actually the assault did happen either way under oath once she had lied so she had that problem. So it really had very little to do with Dr. Ferraro the tactical decision and that was certainly not unreasonable. Let me also say on the time frames counsel has simply misapprehended the record. What the victim mother said to deputy Acton was Morgan the defendant had returned to the house. There's no mystery how he got back to the house because when he left the first time and that's deputy Kennedy at 430 and 446 she gave him the keys to her vehicle. That's at page 49 of the April 10th testimony. That's how he got back to the house. So clearly she was confused on time frames but the important issue is the assault is the return time, the second time. Now dealing with the testimony of Nicole. I'm sorry. Why did the district court deny any kind of an entry hearing? I think because truly there was no way there was either deficient performance or prejudice. And let me just quickly run through the specific allegations. Take Mr. Smith that he should have been called as a witness. Smith and Washington. Okay. Let me do Washington because that's even quicker. Washington says that she goes to sleep at 615 and she doesn't see the defendant thereafter. Well if the assault is roughly at 750 because that's when 911 is called, then Washington has nothing that is helpful in any way. Now dealing with Smith because of course you will judge this by counsel's performance at the time of trial. If this wasn't serious business then the difference between what's. Smith wasn't even interviewed prior to trial right? That's not true. That is categorically not true and let me give you the site for that judge. Smith, it's at page 205 of the excerpts of record which is defendant's own exhibit and defendant acknowledges that his counsel had interviewed Smith and that he, that his counsel told defendant that Smith had nothing helpful. Is that objectively reasonable or true? Certainly it is because at page 210 of the excerpts of record, exhibit four, you see Smith's pretrial interview just before trial saying that he didn't remember anything else about that night and that he didn't, he didn't see anything, didn't see Lonnie with a bat. Two, two years after trial and almost three years after the incident, we get a long affidavit from Mr. Smith. And again, if this were not serious business, it would be comical how his testimony has now changed. What was the page number where he says he didn't remember anything, didn't see anything? That's ER 210, defendant's excerpts of records, page 210. It's memorializes the interview by the Bureau of Indian Affairs investigator. So Mr. Smith, as of the time of trial, didn't have anything helpful to the defense. That's Mr. Smith. Now we've also done Ms. Washington. Let's talk about Dr. Scott, okay? This is what I was concerned about. Okay. Just for my purposes, I need to mention Dr. Scott in case any of the other judges are concerned. Dr. Scott's statement about he would have expected the injuries to be more severe would have been relevant and very important if the crime had been assault resulting in serious bodily injury. But that wasn't the crime charge. The crime charge was assault with a dangerous weapon. And therefore, his equivocal statements as to not being able to rule a bat in and not being able to rule a bat out were not particularly helpful. And as Judge Kleinfeld pointed out earlier, it actually benefited the defense not to have the doctors there, because it enabled the defense to argue that the government simply hadn't met its burden, that we didn't have a doctor testifying, we didn't have a victim testifying, that the government simply had not done its job and had not put evidence before this jury sufficient to convict. That may have been a persuasive argument if this case was tried ten times. With this particular jury, it was not. And that's not the test. It's not whether or not you got a happy result. I would also point out that on the issue of the bat and Dr. Scott, the defense was able to establish through Deputy Acton that the injuries might not have been as severe. So looking at this as of the time that the defense attorney was trying the case, these decisions were reasonable. Dealing, lastly, just with time frames again, Nicole said it was light out when mom was hurt, when mommy got hurt. That's at page 91 of April 9th. It's not light at 430. Nicole said that the Deputy Kennedy testified that it was dark at 446 when he went there. Deputy Acton and Firefighter Essex were there at 750 or 8 o'clock when it would be light out. And that's how you show that actually it is the second assault, when it's light out, that this occurred. And there is no time frame and there is no inconsistency. Unless the court has questions, I will cede the remainder of my time. Thank you, counsel. United States v. Morgan is submitted. Court is adjourned. Thank you, counsel. Prior to the commencement of your argument. That's what he said. Prior to the commencement of.
judges: Cudahy, Beezer, Kleinfeld